# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**BESSIE SPRIGGINS**                                                               **PLAINTIFF**

**vs.**                                                           **CIVIL ACTION No.: 3:14-CV-132-HTW-LRA**

**MAGNOLIA HILL, LLC**
**d/b/a RIVERWALK CASINO**
**HOTEL, LLC**                                                                                  **DEFENDANT**

## ORDER REGARDING PLAINTIFF'S
## POST-TRIAL MOTION

BEFORE THIS COURT is the plaintiff's Motion for Judgment Notwithstanding the Verdict or, In the Alternative, New Trial **[Docket no. 112]**. By her motion, the plaintiff, Bessie Spriggins (hereinafter referred to as "Spriggins"), asks this court to set aside the jury's verdict and either enter judgment in her favor, or order a new trial for two reasons: according to Spriggins, this court improperly allowed the jury to consider comparative negligence; and this court, again according to Spriggins, committed reversible error when it refused to allow Spriggins' expert witness, Dr. Molleston, to testify about Spriggins' need for future surgery.

The defendant, Magnolia Hill LLC doing business as Riverwalk Casino Hotel, LLC, (hereinafter referred to as "Magnolia Hill"), responds that Spriggins' motion is simply an attempt to relitigate issues already decided by this court and that the jury did not consider comparative negligence nor any question on future surgery because it found Magnolia Hill was not negligent in any respect.

This court, in agreement with Magnolia Hill's argument, is persuaded that Spriggins' Motion for Judgment Notwithstanding the Verdict or, In the Alternative, New Trial **[Docket no. 112]** is not well-taken and due to be DENIED in its entirety for the reasons below discussed.

## I.   JURISDICTION

Spriggins filed her complaint in this federal forum on February 14, 2014, alleging that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds the sum of $75,000, exclusive of costs and fees[1].

The Defendants have not challenged subject matter diversity jurisdiction; nevertheless, this court has an independent obligation to verify that indeed it possesses subject matter jurisdiction.[2] Upon a review of the pleadings of the parties, this court finds it possesses diversity of citizenship subject matter jurisdiction because Spriggins is an adult resident of Hinds County, Mississippi. Magnolia Hill is a foreign corporation[3] licensed to do business in the State of Mississippi. Spriggins claimed damages for multiple surgeries – including a shoulder surgery and future back surgeries – in excess of $75,000, exclusive of costs and fees.

## II.   PROCEDURAL HISTORY

As stated *supra*, Spriggins filed her complaint in this federal forum on February 14, 2014, alleging causes of action against Magnolia Hill for negligence under the theory that Magnolia Hill

---

[1] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    (1) citizens of different States;

28 U.S.C.A. § 1332 (West)

[2] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc*., 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).

*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

[3] Spriggins' Complaint alleges that Magnolia Hill is a foreign corporation licensed to do business in the State of Mississippi. [Docket no. 1, P. 1, ¶ 2]. Magnolia Hill admits such in its answer to the complaint. [Docket no. 4, P. 1, ¶ 2].

had failed to maintain its premises in a reasonable condition to prevent injury to business invitees[4]. [Docket no. 1]. Magnolia Hill filed its Answer on April 11, 2014, invoking the affirmative defenses of Spriggins' own negligence as the sole proximate cause of her injuries or, alternatively, that Spriggins had contributed to her injury through her own negligence.

After many months of discovery and motion practice, the parties were ready for a jury trial of this lawsuit that begun on June 20, 2017. The parties contested their respective positions over five (5) days during which they presented their positions to the jury. After deliberation, the jury returned a verdict in favor of the defendant finding that Spriggins had failed to prove by a preponderance of the evidence that Magnolia Hill had actual or constructive notice of the allegedly dangerous condition that had caused an injury to Spriggins. [Docket no. 102]. Accordingly, this court entered judgment in favor of the defendant on June 27, 2017. [Docket no. 107].

Aggrieved with the jury's verdict, Spriggins filed her Motion for Judgment Notwithstanding the Verdict or, In the Alternative, New Trial **[Docket no. 112]** on July 21, 2017. Magnolia Hill filed its response in opposition on August 4, 2017. [Docket no. 113]. Spriggins filed her reply in support on August 10, 2017. [Docket no. 114].

### III. SUMMARY OF TRIAL

The jury trial of this matter lasted for five (5) days during which the plaintiff presented ten (10) witnesses and the defendant presented two (2) witnesses. The parties both submitted various exhibits to the jury as well.

The trial centered on the date of February 14, 2013, when Spriggins and her friend Larry Harris had been guests at Riverwalk Casino, a hotel and casino located in Vicksburg, Mississippi

---

[4] "A business invitee is a person who goes onto and remains on a business's property by express or implied invitation for a purpose related to the business. A store customer is a business invitee."
Miss. Plain Lang. Model Jury Instr. Civ. 325

– owned/operated by Magnolia Hill. Spriggins says that she and Larry Harris, while guests at Riverwalk, visited Riverwalk's buffet.

According to Spriggins, the buffet was busy and she had to wait about forty-five minutes to be seated. Spriggins' statement that the buffet was "packed" was contested by Ruth Harris, an eyewitness with no alleged affiliation to Magnolia Hill and who is not related to Larry Harris. Testifying during the jury trial via video deposition, she stated: "It wasn't a lot of people—matter of fact, it wasn't anybody at the buffet but she [Spriggins] and I. Wasn't anybody else up. It was just a quiet night. It was really quiet."

After being seated, Spriggins left her chair and approached the buffet tables. She prepared two (2) plates. With the salad bar on her left, Spriggins began the return to her table. Before she could reach the table, says Spriggins, she slipped and struck the floor with her tailbone, and left elbow. She suffered a cut to her thumb, she adds.

After she fell, says Spriggins, she observed water leaking from under the salad bar, a movable piece of equipment, she contends. Her friend, Larry Harris, said he also witnessed water trickling from under a machine, which created a puddle.

In contrast, Ruth Harris testified that the buffet area was clean and that she saw no water leaking from the salad bar. Ruth Harris suggests that Spriggins may have slipped on some salad dressing that had been dropped by a patron, or dropped by Spriggins herself. James Abdo ("Abdo"), the Senior Director of Food and Beverage at Riverwalk, also disagreed with Spriggins' testimony. He testified that the salad bar was, and is, fixed to the floor with a concrete base—not moveable as Spriggins had testified—and hard plumbed to the ground. Because of this firm set up, reasoned Abdo, water could not have leaked from the bottom of the salad bar as described by

Spriggins. Moreover, Abdo claims that the refrigeration unit has never leaked, nor has it malfunctioned or required repairs.

Makita Jones ("Jones"), a disgruntled[5] former member of the cleaning crew, though, testified that she had observed a puddle of water shortly before Spriggins' accident, while she was patrolling the casino with her supervisor Marilyn Davis ("Davis"). Jones stated that Davis told her to leave the water on the floor because there was another spill that needed cleaning in a different location in the casino. Davis' testimony, however, did not support that of Jones. Davis denied speaking to Jones about a spill, or entering the buffet prior to Spriggins' fall.

Jones also stated that she had had to clean this particular area frequently because Riverwalk used ice in its salad bar to keep the vegetables cool, and the melted ice would leak onto the floor.

According to Spriggins, an African American male employee of Riverwalk came over to help her after she had slipped. Spriggins alleged that the unknown employee told her that they had noticed the spot and failed to clean it up. Spriggins says she does not know the identity of this Riverwalk employee. Regardless, Spriggins alleged that no warning signs were placed around the puddle and she was not warned about the puddle which, she claimed, was neither open nor obvious.

As a result of the slip-and-fall, Spriggins said she suffered injuries including, but not limited to: a cut thumb; back pain radiating down her legs; neck pain; and a torn rotator cuff in her shoulder. Spriggins' medical evidence was challenged by the defendant.

The court instructed the jury on all issues, liability and damages, and then submitted the jury verdict form to the jury. After deliberation, the eight (8) person jury returned a unanimous verdict in favor of Magnolia Hill. On the Verdict Form submitted to the jury, the jury only reached question 1, which asked as follows:

---

[5] Jones had allegedly been fired from Magnolia Hill for various violations of Magnolia Hill's employee policies.

1. Do you find that Plaintiff has proven by a preponderance of the credible evidence that the Defendant had actual or constructive notice, of an unreasonably dangerous condition on its premises at a point in time before the accident such that it could have remedied or warned of the condition?
   _____ YES   _____ NO

[Docket no. 102]. The jury answered "No", thus having no need to reach questions of comparative negligence or damages.

## IV. DISCUSSION

### a. *Standard of Review*

Federal District Courts must review a motion for judgment notwithstanding the verdict under the jurisprudence governed by Rule 50[6] of the Federal Rules of Civil Procedure.

---

[6] (a) Judgment as a Matter of Law.

    (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

        (A) resolve the issue against the party; and

        (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

    (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

    (1) allow judgment on the verdict, if the jury returned a verdict;

    (2) order a new trial; or

    (3) direct the entry of judgment as a matter of law.

(c) Granting the Renewed Motion; Conditional Ruling on a Motion for a New Trial.

    (1) In General. If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.

    (2) Effect of a Conditional Ruling. Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders

> A judgment notwithstanding the verdict (JNOV) should be granted by the trial court only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of every fair and reasonable inference which the evidence justifies.

*Spuler v. Pickar*, 958 F.2d 103, 105 (5th Cir. 1992) (citing *Harwood & Assoc., Inc. v. Texas Bank & Trust*, 654 F.2d 1073, 1076 (5th Cir. Unit A Sept. 1981)). When considering a motion for judgment as a matter of law, the Court must consider all of the evidence contained in the record. *Reeves*, 530 U.S. at 150.

> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Id.* at 150-51 (citations omitted). This Court "will not disturb the jury's verdict unless, considering the evidence in the light most favorable to [the plaintiff], the facts and inferences point so overwhelmingly to [the defendants] that reasonable jurors could not have arrived at a verdict except in [their] favor." *Streber v. Hunter*, 221 F.3d 701, 721 (5th Cir. 2000) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir. 1998)).

*Bridges v. Enter. Prods. Co.*, 551 F. Supp. 2d 549, 552-53 (S.D. Miss. 2008).

---

otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

(d) Time for a Losing Party's New-Trial Motion. Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment.

(e) Denying the Motion for Judgment as a Matter of Law; Reversal on Appeal. If the court denies the motion for judgment as a matter of law, the prevailing party may, as appellee, assert grounds entitling it to a new trial should the appellate court conclude that the trial court erred in denying the motion. If the appellate court reverses the judgment, it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment.

Fed. R. Civ. P. 50

By her motion, plaintiff asks this court to set aside the jury's verdict – that which favored the defendant – and either to grant her judgment as a matter of law or, alternatively, a new trial. Plaintiff alleges that this court abused its discretion by instructing the jury on comparative negligence and by excluding part of the expert witness testimony, of Dr. Michael Molleston, proffered by the plaintiff.

Plaintiff also asks this court, alternatively, to view her request as a motion for a new trial based on the same grounds. Fifth Circuit precedent for granting a new trial is similar to its standard for directed verdict/judgment notwithstanding the verdict.

> "[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence". *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (*quoting Dotson v. Clark Equip. Co*., 805 F.2d 1225, 1227 (5th Cir. 1986)). The district court has "sound discretion" to grant or deny new trial motions; [the Fifth Circuit Court of Appeals] will affirm absent "a clear showing that this discretion has been abused". *Pryor*, 138 F.3d at 1026; *see also Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998); Bernard v. IBP, Inc., 154 F.3d 259, 264 (5th Cir. 1998).

*Whitehead v. Food Max*, 163 F.3d 265, 269 (5th Cir. 1998).

This court is persuaded that plaintiff has not met her burden under either a motion for a judgment notwithstanding the verdict or under a motion for new trial. The reasoning of this court is set out below.

### b. *Jury Instructions*

Initially, plaintiff complains about the jury instructions this court gave the jury in this lawsuit. This court held a jury instruction conference with the parties after the close of the evidence and formulated, with the parties, the jury instructions it would use to charge the jury.

> Regarding jury instructions, the trial court possesses considerable discretion. *Bickham v. Grant*, 861 So. 2d 299, 301 (Miss. 2003) (*citing Southland Enters. v. Newton County*, 838 So. 2d 286, 289 (Miss. 2003) (*citing Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992)). A party is entitled to a jury instruction if it concerns a genuine issue of material fact and there is credible evidence to support the

8

> instruction. *Mariner Health Care, Inc. v. Estate of Edwards*, 964 So. 2d 1138, 1156 (Miss. 2007) (*citing DeLaughter v. Lawrence County Hosp.*, 601 So. 2d 818, 824 (Miss. 1992)).

*Young v. Guild*, 7 So.3d 251, 259 (Miss. 2009).

After the jury instruction conference, this court announced the jury instructions it intended to, and did, charge the jury. Plaintiff objected at that time about the comparative negligence instruction. This court overruled her objection.

### i. Comparative Negligence

As an initial observation, the jury did not reach the question of comparative negligence in this lawsuit *sub judice*. The first question submitted to the jury asked if the jury had determined whether the defendant was negligent in any respect, thereby causing plaintiff's alleged injury. The jury answered "No". Even had this court erred in instructing the jury to consider comparative negligence, the given instruction had no effect upon the jury's verdict finding that defendant had manifested no negligence whatsoever relative to the incident in question.

Plaintiff cites in support *King v. Kroger Co.*, 787 So.2d 677, 681 (Miss. 2001). The Mississippi Supreme Court, in *King*, held that the comparative negligence jury instruction, given in that lawsuit, confused the jury. The court's reasoning however, was telling: "there was not a single instance of negligence on the part of [the Plaintiff] which could have supported a comparative negligence finding". *Id* at 681. The *King* situation is not the factual scenario here.

The defendant responds, and this court agrees, that the evidence in this lawsuit clearly provided the jury with incidents from which the jury could have found that plaintiff was negligent. Furthermore, says the defendant, plaintiff did not preserve the issue of comparative negligence for either this court or the Fifth Circuit Court of Appeals to review.

This court is not persuaded that plaintiff failed to preserve this issue. Plaintiff actually objected to any comparative negligence analysis or presentation of such to the jury. This court recalls that it instructed plaintiff that she had preserved the issue and could stop objecting based on these grounds. Plaintiff nevertheless continued to object. Fifth Circuit precedent is quite clear on this issue, that it "construes rule 50(b) liberally" and that "[t]o demand slavish adherence to the procedural sequence … would be to 'succumb to a nominalism and rigid trial scenario as equally at variance as ambush with the spirit of the rules.'" *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 674 (5th Cir. 1996).

As this court above began to discuss, various points of plaintiff's testimony could have served as a basis for the jury finding comparative negligence: plaintiff walked around the salad bar without incident at least one time before she allegedly fell; and plaintiff admitted that on the subsequent trip, she was not paying attention to her surroundings.

Finally, this court returns to its premiere point: by what logic would this court overturn a jury's verdict finding no fault with defendant's conduct because the jury was given an instruction that if it found defendant partially negligent, the jury was to apportion fault between the defendant and the plaintiff. How plaintiff interprets the jury's verdict as other than a complete vindication is beyond the ken of the court, no liability means "No liability"!

    ii. <u>Plaintiff's Negligence</u>

Equally confusing is plaintiff's argument that this court should have given a negligence instruction about what negligence she allegedly committed. Apparently, this criticism is a variant attempt to plow the same ground dealing with comparative negligence.

Court's jury instruction D-10 properly instructed the jury that plaintiff had a duty to exercise reasonable care and observe any hazard on the floor and if she failed to observe an

10

allegedly dangerous condition, she was at least partly responsible for her own negligence. As stated, this is a correct statement of the law. *See Massey v. Tingle*, 867 So.2d 235 (Miss. 2004); *Ware v. Frantz*, 87 F.Supp. 2d 643 (S.D. Miss. 1999); *Frazier v. McDonald's Restaurants of Mississippi*, 102 So.3d 341 (Miss. 2012); *King v. Kroger Company*, 787 So.2d 677 (Miss. 2001); *See also* MISS. CODE ANN. § 85-5-7[7]. Although plaintiff wishes through some sleight-of-hand to weave some error out of a "no liability" cloth, plaintiffs skips over her credibility deficiencies in her testimony: first of all, the defense witnesses challenge whether plaintiff actually suffered an accident; then her on-the-stand testimony opened choice points for cross-examination – plaintiff became "confused" about her story on the stand; plaintiff accused two different hospitals of falsifying her records; and plaintiff did not clearly recall which of her body parts were injured as a result of her alleged fall. The jury clearly was warranted in finding that plaintiff was untruthful. Furthermore, the testimony of other fact witnesses refute Spriggins' version of the incident in

---

[7] (1) As used in this section, "fault" means an act or omission of a person which is a proximate cause of injury or death to another person or persons, damages to property, tangible or intangible, or economic injury, including, but not limited to, negligence, malpractice, strict liability, absolute liability or failure to warn. "Fault" shall not include any tort which results from an act or omission committed with a specific wrongful intent.

(2) Except as otherwise provided in subsection (4) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault. In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.

(3) Nothing in this section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly noted herein.

(4) Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it. Any person held jointly and severally liable under this section shall have a right of contribution from his fellow defendants acting in concert.

(5) In actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault without regard to whether the joint tort-feasor is immune from damages. Fault allocated under this subsection to an immune tort-feasor or a tort-feasor whose liability is limited by law shall not be reallocated to any other tort-feasor.

(6) Nothing in this section shall be construed to create a cause of action. Nothing in this section shall be construed, in any way, to alter the immunity of any person.

MISS. CODE. ANN. § 85-5-7 (West)

question: Ruth Harris testified she did not see water on the floor; Abdo testified water could not be on the floor due to the design of the buffet tables; and Davis testified that she did not instruct Jones to leave water on the floor.

### iii. Alleged Conflicting Instructions D-4 and C-3

Finally, plaintiff says jury instructions D-4[8] and C-3[9] are conflicting because, according to plaintiff, D-4 was peremptory and required her to prove six (6) points of law. Plaintiff says that

---

[8] "You are instructed that the law in this state does not impose a duty upon a business to maintain its premises in a perfect condition or to provide perfect protection against accidents. A business does not have a duty to guarantee or ensure the safety of its patrons. Further, the law does not require a business to guarantee that its premises will be absolutely free at all times of dangerous conditions. You are further instructed that the duty owed by Magnolia Hill, LLC to the plaintiff is only to use reasonable care in maintaining its premises in a reasonably safe condition, and when the premises are not reasonably safe to warn only where there is a hidden danger or peril which was not readily apparent to plaintiff and which the defendant knew of or should have known of, in the exercise of reasonable care. Thus, if the plaintiff has not proved by a preponderance of the evidence that Magnolia Hill, LLC failed to maintain its premises in a reasonably safe condition, then you must return a verdict for the defendant.

To prove that Magnolia Hill, LLC failed to maintain its premises in a reasonably safe condition, plaintiff must prove, by a preponderance of the evidence that:

1. That there was a slippery substance on Magnolia Hill, LLC's premises on February 14, 2013;
2. That if there was a slippery substance on Magnolia Hill, LLC's premises on February 14, 2013, the presence of said substance was an unreasonably dangerous condition;
3. That the slippery substance was a hidden danger or peril that was not readily apparent to the Plaintiff Bessie Spriggins;
4. That Magnolia Hill, LLC knew or should have known in the exercise of reasonable care that there was a slippery substance on the floor;
5. That Magnolia Hill, LLC failed to take reasonable steps to warn its customers of the condition of the floor; and
6. The condition of the floor caused the plaintiff to fall and was a proximate cause of the Plaintiff Bessie Spriggins's injuries.

If the Plaintiff fails to prove any of these elements by a preponderance of the evidence, then you must return a verdict for Magnolia Hill, LLC."

[Docket no. 113-2, PP. 16-17].

[9] "Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like or similar circumstances, or in failing to do something that a reasonable careful person would do under like or similar circumstances.

Plaintiff alleges that water was on the floor in the buffet areas. This alleged presence of water in the buffet area, claims Plaintiff, created a hazardous condition. Plaintiff has the burden of proving these assertions by a preponderance of the evidence and that defendant had actual or constructive notice of the hazardous condition. Should plaintiff prove these allegations, you must next determine whether defendant was negligent in any of the following respects:

12

because of D-4, she was required to prove the elements in C-3 to a higher standard than is required under the law. Plaintiff does not cite any authority or address specifics: she merely makes conclusory statements, apparently in passing.

Still, defendant responds. Both D-4 and C-3 are correct statements of the law and should be considered as a whole says defendant. This court agrees.

### iv. Plaintiff's Duty to Mitigate

Plaintiff next says that this court erred in charging the jury with jury instruction D-16, which, plaintiff says, "required the jury to consider Plaintiff at fault for failing to mitigate her damages by failing to use due care to avoid any alleged harm." [Docket no. 112, P. 10]. First of all, plaintiff incorrectly states that the instruction "required the jury to consider Plaintiff at fault for failing to mitigate her damages." Plaintiff's attempt to distort the thrust of the instruction is clearly revealed when one reads the actual instruction, which only concerns damages, not liability.

---

1. From the evidence, whether defendant and/or its agents/employees used reasonable care as a reasonably careful person would do relative to cleaning up the water on the floor of the buffet area. If you find that the defendant did not do so, whether this failure to use reasonable care to clean up the water on the floor in the buffet area, if any, was the sole proximate cause or proximate contributing cause of the plaintiff falling on the wet floor and plaintiff's resulting injuries.
2. From the evidence, whether defendant and/or its agents/employees, if aware of the alleged water, used reasonable care as a reasonably careful person would do relative to staying with the spill, if you determine that there was a spill, until it was cleaned up as per the defendant's policy, and if not, whether this failure to use reasonable care to stay with the spill until it was cleaned up as per the defendant's policy was the sole proximate cause or proximate contributing cause of the plaintiff falling on the wet floor and plaintiff's resulting injuries.
3. From the evidence, whether defendant and/or its agents/employees used reasonable care as a reasonably careful person would do to warn somehow or then to mark the wet floor with caution cones so that the wet area would be recognizable to the plaintiff, and if not, whether this failure to use reasonable care to provide caution tape or cones around the wet floor was the sole proximate cause or proximate contributing cause of the plaintiff falling on the wet floor and plaintiff's resulting injuries.

Again, plaintiff has the burden to prove any or all of her claims by a preponderance of the evidence. The defendant does not have any such burden."

[Docket no. 113-2, PP. 19-20].

Agreeing, defendant correctly retorts that this issue is moot because the jury never reached the question of comparative negligence. Even so, plaintiff testified that she had not seen a doctor for months following the alleged accident.

The challenged jury instruction is clearly an instruction on damages, not liability.

> You are instructed that the plaintiff was under a duty after suffering harm, if any, to exercise due care and take reasonable steps to avoid or diminish the damages resulting from that harm. You are further instructed that the plaintiff is not entitle to damages for the harm that she could have avoided by the use of due care, nor for the harm which proximately resulted from plaintiff's own conduct which contributed to plaintiff's damages, if any.
>
> If you find that Bessie Spriggins failed to mitigate her damages, if any, or that she failed to use due care to avoid any alleged harm, then you must not award damages for the farm that Bessie Spriggins could have avoided by the use of due care.

[Docket no. 113-2, P. 30].

Plaintiff's argument based on these grounds lacks any merit; the jury never reached the issue of damages.

v. <u>Defendant's Alleged Violation of its Policy</u>

The plaintiff also complains that this court should have given a jury instruction that defendant allegedly was on notice of a dangerous condition and because it failed to prevent plaintiff's fall, it violated its own policy. Plaintiff bases her argument on *Fulton v. Robinson Industries, Inc.*, 664 So.2d 170 (Miss. 1995). Plaintiff's quote from *Fulton* is a statement of black letter law:

> An owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of; or should know of; in the exercise of reasonable care.

*Fulton v. Robinson Indus.*, 664 So. 2d 170, 175 (Miss. 1995). Plaintiff, however, fails to show this court how that statement of black letter law mandates this court to give an instruction that

14

defendant allegedly violated its own policy, and that such was dispositive of the issue of defendant's liability for negligence. This court submitted this litigation to the jury because the facts here were disputed. The jury simply unraveled those disputes on liability in defendant's favor.

    **c.** *Expert Witness*

Plaintiff says that Rule 702[10] of the Mississippi Rules of Evidence supports her argument that this court should have allowed Dr. Molleston to testify in full about his treatment of plaintiff as well as his belief that plaintiff would require future surgery. Plaintiff is mistaken that the Mississippi Rules of Evidence govern proceedings in federal courts that lie in the State of Mississippi. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996). *See also Washington v. Dept. of Transp.*, 8 F.3d 296 (5th Cir. 1993)(finding that the Federal Rules of Evidence are procedural and thus, federal courts are governed by the Federal Rules of Evidence). Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[10] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

M.R.E. 702

Fed. R. Evid. 702.

Plaintiff designated Dr. Molleston as an expert witness in the field of neurosurgery. Dr. Molleston had treated plaintiff in mid to late 2013 purportedly for injuries plaintiff sustained during a fall at the defendant's place of business on February 14, 2013. At that time, Dr. Molleston did not recommend surgery nor medication for plaintiff's injuries. Dr. Molleston later met the plaintiff in a hallway – when plaintiff was no longer being treated by Dr. Molleston – years after plaintiff had stopped seeing Dr. Molleston as his patient. During that chance encounter, plaintiff was working at that hospital as a health care provider. At trial, during defendant's *voir dire* of this witness, the defense learned that Dr. Molleston at this chance, hallway meeting, had formulated his opinion that plaintiff would require future surgery. Dr. Molleston, at that time, had not seen plaintiff in years, nor had he reviewed plaintiff's medical records to make his determination that plaintiff required future surgery.

Plaintiff has not provided any additional authority which would persuade this court to change its earlier ruling that Dr. Molleston's expected testimony about the need for future surgery should be changed. Accordingly, this court finds that plaintiff's motion should be denied based on this ground.

Once more, this court has to remind plaintiff that the jury never had a need to address damages. The jury's verdict form, as plaintiff has steadfastly ignored, recited as follows:

1. Do you find that Plaintiff has proven by a preponderance of the credible evidence that the Defendant had actual or constructive notice, of an unreasonably dangerous condition on its premises at a point in time before the accident such that it could have remedied or warned of the condition?

    _____YES        \_\_\_\_✓_____NO

    If you checked "NO" proceed no further and notify the court that you have reached a verdict. In that instance, your verdict will be for the defendant and against the plaintiff.

If you checked "YES" proceed to Question Two.

2. Do you find that Plaintiff was negligent and that such negligence caused or contributed to the accident?

_____YES                    _____NO

Proceed to Question Three.

3. What percentage of fault for the accident and resulting damages, if any, do you assign? (The total percentages must equal 100%)

a) Plaintiff           _____%

b) Defendant       _____%

Proceed to Question Four.

## **DAMAGES**

4. What amount of money, if any, do you find the plaintiff has proven by a preponderance of the credible evidence for the following?
   c) Reasonable and necessary medical expenses incurred     $_____
   d) Pain and Suffering                                                              $_____

If you have reached this point, notify the court.

SO SAY WE ALL

[Docket no. 102].

The jury has spoken – but, apparently, not loudly enough for plaintiff to hear.

    d. *Harmless Error*

Defendant, having heard and reviewed the verdict, correctly states that the jury never reached the issues of comparative negligence or damages. As stated *supra*, the jury found that defendant was not negligent at all. Consequently, the jury never had to decide the two issues about which plaintiff now complains: comparing the alleged negligence of the plaintiff with that of the defendant; and how much money the jury should have awarded plaintiff for her alleged injuries. This court, further, is persuaded that, even had this court erred either in giving the jury instructions

about which the plaintiff complains, or by excluding certain portions of Dr. Molleston's testimony, such would be harmless error.

V. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that plaintiff's **Motion for Judgment Notwithstanding the Verdict or, In the Alternative, New Trial [Docket no. 112] is hereby DENIED.**

**SO ORDERED AND ADJUDGED this the 26th day of March, 2018.**

                                      **s/ HENRY T. WINGATE**
                                      **UNITED STATES DISTRICT COURT JUDGE**